# EXHIBIT A

1

**THE RAMIREZ LEGAL GROUP**

2

April Ramirez, State Bar No. 319760
april@theramirezlegalgroup.com

3

468 N. Camden Dr., Suite 5555
Beverly Hills, California 90210

4

Telephone: (800) 411-0428
Facsimile: (424) 284-1402

5

**THE ALEXANDROFF LAW GROUP**

6

Nicholas Alexandroff, State Bar No. 309747

7

nicholas@alglegal.com
16542 Ventura Blvd., Suite 203

8

Encino, CA 91436
Telephone: (818) 908-8899

9

Facsimile: (818) 908-8898

10

Attorneys for Plaintiff, THEODORE
HATLESTAD

11

**ELECTRONICALLY FILED**
10/24/2022 1:46 PM
Kern County Superior Court
By Edith Carrillo, Deputy

12

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

13

**COUNTY OF KERN**

14

BCV-22-102839

15

THEODORE HATLESTAD, an individual,

16

  Plaintiff,

17

  v.

18

O'REILLY AUTO ENTERPRISES LLC, a
limited liability company; AUSTIN GILMORE,

19

an individual; JASON VELLIDO, an individual;
and DOES 1-30, inclusive,

20

21

  Defendants.

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES FOR:

(1)  DISABILITY DISCRIMINATION IN
     VIOLATION OF FEHA;

(2)  DISABILITY RETALIATION IN
     VIOLATION OF FEHA;

(3)  DISABILITY HARASSMENT IN
     VIOLATION OF FEHA;

(4)  FAILURE TO DO EVERYTHING
     REASONABLY NECESSARY TO
     PREVENT DISCRIMINATION,
     HARASSMENT AND RETALIATION
     FROM OCCURING IN VIOLATION
     OF FEHA;

(5)  NEGLIGENT HIRING, TRAINING,
     SUPERVISION, AND/OR
     RETENTION;

(6)  WRONGFUL
     TERMINATION/ADVERSE ACTION
     IN VIOLATION OF PUBLIC POLICY;

(7)  VIOLATION OF BUSINESS AND

1

PROFESSION CODE §17200, ET SEQ.;

(8)    INTENTIONAL INFLICTION OF
EMOTIONAL DISTRESS

[JURY TRIAL DEMANDED ON ALL
ISSUES AND CAUSES OF ACTION]

      **COMES NOW** Plaintiff THEODORE HATLESTAD ("PLAINTIFF", "Plaintiff", or "Mr. Hatlestad"), individually, for causes of action against defendant O'REILLY AUTO ENTERPRISES LLC ("O'REILLY" or "EMPLOYER"), a limited liability company; AUSTIN GILMORE ("GILMORE"), an individual; JASON VELLIDO ("VELLIDO"), an individual; and DOES 1 through 30, inclusive, (all collectively "DEFENDANTS", "defendants") as follows:

The following is pled on information and reasonable belief:

## INTRODUCTION

      1.     This employment and personal injury action stems from defendants' knowing and willful exposure of Plaintiff to COVID-19 and their wrongful termination of Plaintiff in retaliation for his leave of absence due to his disability (COVID-19).

## THE PARTIES

      2.     Plaintiff THEODORE HATLESTAD is an individual residing at all relevant times herein mentioned in the County of Kern, State of California. Plaintiff was employed by O'REILLY and at the time of his termination, was as a retail service specialist.

      3.     Defendant O'REILLY is a limited liability company formed in the state of Delaware, at all relevant times qualified for business operations in the State of California, and with substantial contacts in the State of California. Its principal address is 233 S. Patterson Ave., Springfield, Missouri 65802.

      4.     Defendant GILMORE is an individual residing at all relevant times herein mentioned in the County of Kern, State of California. At all relevant times mentioned herein, GILMORE was an employee, district manager, and a managing agent for O'REILLY. At all relevant times,

1  GILMORE exercised substantial independent authority and judgment in his corporate decision-
2  making so that his decisions ultimately determined corporate policy.

3      5.      Defendant VELLIDO is an individual residing at all relevant times herein mentioned
4  in the County of Kern, State of California. At all relevant times mentioned herein, GILMORE was
5  an employee, store manager, and a managing agent for O'REILLY. At all relevant times, GILMORE
6  exercised substantial independent authority and judgment in his corporate decision-making so that
7  his decisions ultimately determined corporate policy.

8      6.      At all times relevant to this complaint, O'REILLY was Plaintiff's employer and
9  employed substantially more than 25 employees. O'REILLY operates and owns numerous auto part
10  retail stores throughout the country.

11     7.      Defendants DOES 1 through 30 are persons or entities whose true names and
12  identities are presently unknown to PLAINTIFF, and who therefore are sued under fictitious names.
13  PLAINTIFF is informed and believes and thereon alleges that each of the fictitiously named
14  defendants are responsible in some manner for the injuries and events alleged herein, and are jointly
15  and severally liable to PLAINTIFF. PLAINTIFF will seek leave of court to amend this complaint to
16  state the true names and capacities of such fictitiously named defendants when ascertained.

17     8.      At all times herein mentioned, DEFENDANTS, and each of them, were members of,
18  and engaged in, a joint venture, partnership and common enterprise, and acting within the course and
19  scope of, and in pursuance of, said joint venture, partnership and common enterprise.

20     9.      At all times herein mentioned, the acts and omissions of various DEFENDANTS, and
21  each of them, concurred and contributed to the various acts and omissions of each and all of the other
22  DEFENDANTS in proximately causing the injuries and damages to PLAINTIFF as herein alleged.

23     10.     At all times herein mentioned, DEFENDANTS, and each of them, ratified each and
24  every act or omission complained of herein.  At all times herein mentioned, DEFENDANTS, and
25  each of them, aided and abetted the acts and omissions of each and all of the other DEFENDANTS
26  in proximately causing the injuries and damages to PLAINTIFF as alleged herein.

27                      **JURISDICTION AND VENUE**

28     11.     Venue is proper in the County of Kern pursuant to Code of Civil Procedure section

1    395(a) because the subject acts and omissions causing PLAINTIFF's injuries and damages occurred

2    in the County of Kern, State of California, and because defendants GILMORE and VELLIDO reside

3    in the County of Kern, State of California.

4           12.    The amount of controversy exceeds the jurisdictional minimum of this Court.

5           13.    Plaintiff obtained his right to sue letter from the Department of Fair Employment &

6    Housing ("DFEH") on October 24, 2022. (Attached as **Exhibit 1**).

7                                **GENERAL ALLEGATIONS**

8           14.    Whenever and wherever reference is made in this complaint to any act by a defendant

9    or Defendants, such allegations and references shall also be deemed to mean the acts or failures to

10   act of each defendant acting individually, jointly and severally.

11          15.    PLAINTIFF filed a complaint against Defendant with the Department of Fair

12   Employment and Housing, thereby exhausting the administrative remedies.   Plaintiff received a

13   letter from the Department of Fair Employment and Housing giving PLAINTIFF the right to sue

14   Defendant. A Right to Sue Letter has been served on Defendants and is incorporated as though set

15   forth herein.

16          16.    PLAINTIFF started working for EMPLOYER in or around October 2020 at

17   EMPLOYER'S store located at 104 Roberts Lane, Bakersfield, CA 93308. Mr. Hatlestad is diabetic

18   and considered to be part of a high-risk population for COVID-19. Store manager, VELLIDO, not

19   only knew about this, but being diabetic himself, often had conversations with Mr. Hatlestad about

20   their health.

21          17.    July 2021: For several months, as part of COVID prevention protocol, all store

22   employees were to have their temperatures taken at the beginning of their shifts and the

23   information was to be recorded on a COVID data sheet along with each employee's initial. This .

24   was almost never done at the subject store. District manager, GILMORE, is to visit the subject

25   store for evaluation in July 2021. The night before GILMORE'S visit, store manager, VELLIDO,

26   orders Mr. Hatlestad to falsify the COVID data sheets to make it appear as if though the store's

27   employees were having their temperatures taken as required on a daily basis. VELLIDO also orders

28   Mr. Hatlestad to forge employee initials.

PLAINTIFF'S COMPLAINT FOR DAMAGES

18. ~10/01/21 – 11/16/2021: Subject store has difficulties—no to little management, short-staffed, and tired, overworked employees. During this time, Mr. Hatlestad works a lot of overtime—double shifts and 6 or 7 days per week. During at least this time, employees are discouraged from calling in sick and have to work alongside sick, COVID-19 symptomatic co-workers.

19. ~10/14/2021: Store employee, Amber, gives resignation notice.

20. 10/16/2021: Mr. Hatlestad calls VELLIDO and tells him he feels ill and not well enough to come to work. Jason discourages him from staying home and reminds Mr. Hatlestad that they are short-staffed. Not wanting to be retaliated against or leave his team in a bad position, Mr. Hatlestad comes in to work.

21. 10/17/2021 – 10/21/2021: Despite being severely short-staffed, VELLIDO goes on vacation leaving the subject store even more understaffed and his already overworked and fatigued employees left to cover for him.

22. 10/24/2021: Assistant manager, Savannah, resigns.

23. ~10/25/2021: Closing manager, Izec, goes on COVID sick leave. Mr. Hatlestad and Frank Sickler are the only employees who can work closing shifts.

24. 10/29/2021 – 11/01/2021: Mr. Hatlestad is feeling overworked and fatigued. He feels worse as time progresses but does not call in sick for fear of retaliation as the store is so short-staffed and would most likely have to close down for business if he missed work. During this same time, Frank Sickler is in very bad shape and showing obvious symptoms of COVID-19 (coughing, fatigue, body aches, sweating, and fever). Mr. Hatlestad is made to close the store with Frank every night and is in close contact with him.

25. Employees Theodore Hatlestad and Frank Sickler outwardly show symptoms of COVID-19 and are obviously ill. District manager, GILMORE, store manager VELLIDO, and later his replacement, Tim, are all aware but refuse to send any sick employees home. Employees, including Mr. Hatlestad, fear losing their jobs or having other adverse actions taken against them for calling in sick or going home early.

///

PLAINTIFF'S COMPLAINT FOR DAMAGES

1    26.    ~10/30/2021: VELLIDO'S last day at the subject store as store manager. VELLIDO

2  has been demoted and is to transfer to another store.

3    27.    10/31/2021 – 11/01/2021: Subject store is without store manager.

4    28.    11/01/2021: GILMORE, district manager, is at the subject store for a few hours. Mr.

5  Hatlestad and Frank Sickler are also present that day at the same time GILMORE is there and both

6  show COVID symptoms.

7    29.    11/02/2021: After working in the back of the store most of the day, Mr. Martinez

8  goes to the front of the store to help the staff with customers. He notices that Mr. Hatlestad and

9  Frank Sickler are very ill and subsequently approaches the store manager, Tim, to tell him that

10  these two employees are very sick and are displaying COVID-19 symptoms such as coughing,

11  body aches, sweating, and fever. Mr. Martinez asks Tim to allow them to go home. This was the

12  third day in a row that employee, Frank Sickler, had shown up to work with severe COVID

13  symptoms. Tim refuses to let either employee go home and his dismissive response is "it happens

14  to all of us, they're just gonna have to push through it" and proceeds to walk away.

15    30.    Hearing what Tim had to say, Mr. Hatlestad continues to "push through" his shift.

16  Frank is too sick to stand up and has to go to the back of the store and sit down often. After seeing

17  this, Mr. Martinez once again approaches Tim about his coworkers' condition. Tim once again

18  dismisses Mr. Martinez's concerns and refuses to send either of the two ill employees home. Tim

19  refuses to stay and cover for either employee. Mr. Martinez, fearing for Frank's health, agrees to

20  stay and work another double shift. Despite knowing that Mr. Sickler and Mr. Hatlestad are very ill

21  and showing COVID-19 symptoms, Tim selfishly goes home leaving Mr. Martinez and Mr.

22  Hatlestad to close the store.

23    31.    Later that night, Mr. Martinez texts Mr. Hatlestad to let him know that Mr. Sickler

24  had just been discharged from the hospital and tested positive for COVID-19. Mr. Martinez

25  recommends to Mr. Hatlestad that he should also get tested for COVID and Mr. Hatlestad agrees.

26    32.    That same night, Mr. Martinez also texts Tim to let him know that Mr. Sickler tested

27  positive for COVID. Tim never responds.

28    ///

PLAINTIFF'S COMPLAINT FOR DAMAGES

33.    11/03/2021: Mr. Hatlestad calls in sick to the store first thing in the morning. Tim gives Mr. Hatlestad the number to the O'REILLY COVID line. Prior to this, Mr. Hatlestad didn't know that any such number/line existed—he had never been told to call this line if he was feeling sick. Mr. Hatlestad gets tested for COVID.

34.    11/04/2021: Mr. Hatlestad receives positive COVID test result from his doctor. Mr. Hatlestad relays this information to the COVID hotline and he is ordered to stay home on COVID leave, which he does.

35.    11/04/2021 – 11/12/2021: Mr. Hatlestad is on COVID-19 sick leave. During this time, newly re-hired assistant manager, Savannah, harasses him by texting on several occasions to see if he can come back and work. Mr. Hatlestad, still not feeling well, responds that he is still sick.

36.    11/05/2021: Izec returns to work from COVID sick leave.

37.    ~11/08/2021: Amber withdraws her resignation notice and stays to work at the subject store.

38.    11/13/2021: Mr. Hatlestad returns to work.

39.    11/16/2021: GILMORE asks Mr. Hatlestad why he came in to work on 11/02/2021 feeling ill. Mr. Hatlestad responds that he feared retaliation as the store would have had to close down.

40.    A short while later, GILMORE calls Mr. Hatlestad back into the office and terminates him for working while sick.

41.    11/17/2021: Mr. Hatlestad writes a letter appealing his termination.

42.    11/18/2021: Mr. Hatlestad writes a supplemental letter for his appeal.

43.    11/29/2021: O'REILLY'S denies Mr. Hatlestad's appeal.

44.    PLAINTIFF has not been reinstated or rehired by EMPLOYER.

45.    EMPLOYER took adverse employment actions against PLAINTIFF, including termination, due to (1) his disability; and (2) use of reasonable accommodations.

46.    At all relevant times, PLAINTIFF was a protected class member as he was perceived by Defendants to have disabilities—COVID-19 and diabetes.

47.    At all relevant times mentioned in this complaint PLAINTIFF performed his job for

1  EMPLOYER in a satisfactory and competent manner.

2      48.    The damages sought by Plaintiff in this action far exceed the minimum jurisdictional

3  amount of this court so that court has jurisdiction of this matter. Plaintiff has sustained general and

4  special damages within the jurisdictional limits of this Court.

5      49.    Plaintiff is informed and believes and, on that basis, alleges, DEFENDANTS

6  engaged, continue to engage, and will continue to engage in the foregoing conduct set forth in this

7  complaint unless they are restrained from so doing. Defendants' conduct has injured Plaintiff as

8  well as others and will continue to cause irreparable injury to Plaintiff and others, who have no

9  adequate remedy at law. Relief by damages alone for Defendants' continuing conduct would require

10  a multiplicity of suits. Accordingly, Plaintiff is also entitled to injunctive and declaratory relief

11  including declaratory relief that there were violations of FEHA, public policy and the law by

12  DEFENDANTS.

13      50.    Plaintiff seeks damages, attorney fees, costs, injunctive, declaratory relief and any

14  other remedies he is entitled to under the law pursuant to the claims alleged in this complaint.

15      51.    The conduct which Plaintiff complains of in this complaint, and which is alleged

16  below, was carried out by all DEFENDANTS willfully, intentionally, and with oppression, malice

17  and fraud and was carried out with conscious disregard of Plaintiff's rights as guaranteed by the

18  state law pursuant to which Plaintiff is entitled to an award of exemplary damages according to

19  proof.

20      52.    Plaintiff had to employ an attorney to prosecute this action and have thereby incurred

21  costs and attorney fees. Such attorneys' fees and costs are necessary for the prosecution of this

22  action for which Plaintiff is entitled to an award of attorneys' fees and costs in an amount according

23  to proof.

24  **FIRST CAUSE OF ACTION**

25  DISABILITY DISCRIMINATION IN VIOLATION OF FEHA

26  By Plaintiff against EMPLOYER and DOES 1-30

27      53.    Plaintiff incorporates herein by reference and re-alleges each and every paragraph in

28  this Complaint as though duly set forth in full herein.

PLAINTIFF'S COMPLAINT FOR DAMAGES

1        54.     EMPLOYER employed at least five employees during all relevant time periods of

2  Plaintiff's employment.

3        55.     Plaintiff was, at all times material hereto, a disabled employee (and one who engaged

4  in legally protected conduct) and within a protected class covered by Cal. <u>Gov. Code</u> § 12940.

5        56.     Under FEHA, it is an unlawful employment practice for an employer because of a

6  person's actual or perceived disability or because of a person's association with another person

7  who is a disabled, seeks accommodation, opposes practices forbidden by FEHA or otherwise

8  protected under FEHA or public policy, to refuse to hire or employ the person, to refuse to select

9  the person for a training program leading to employment, to bar or discharge/terminate the person

10  from employment or from a training program leading to employment, or to discriminate against

11  the person in compensation or in terms, conditions, or privileges of employment.  It is unlawful

12  under FEHA for any person to aid, abet, incite, compel, or coerce the doing of any of the acts

13  forbidden under FEHA, or to attempt to do so.  It is unlawful, under FEHA, for an employer to fail

14  to take all reasonable steps necessary to prevent discrimination and harassment based on an

15  employee's perceived or actual association with another person who is a disabled, seeks

16  accommodation, opposes practices forbidden by FEHA otherwise protected under FEHA or public

17  policy.

18        57.     Under FEHA, it is an unlawful employment practice for an employer to discharge,

19  expel, or otherwise discriminate against any person because the person has opposed any practices

20  forbidden under FEHA or because the person has filed a complaint, testified or assisted in any

21  proceedings under FEHA.  This includes opposing practices on behalf of themselves, others they

22  are associated with or based on the protected status of others.

23        58.     Under FEHA it is a protected activity to oppose practices forbidden by FEHA, to

24  file and/or make a complaint with The Department of Fair Employment and Housing, participate

25  or assist in any proceeding regarding and/or in support of a FEHA complaint or violation, assert

26  rights pursuant to FEHA, assist in or participate in investigating unlawful discrimination and

27  harassment, complain about, and/or report, unlawful discrimination, harassment and/or retaliation,

28  complain about, and/or report, being retaliated against, discriminated against and/or harassed for

1  opposing practices forbidden by FEHA.

2      59.    EMPLOYER and/or their agents/employees discriminated against and retaliated

3  against PLAINTIFF as to the terms, conditions, and privileges of employment, and committed

4  adverse employment actions against PLAINTIFF, as stated below, all in violation of the FEHA.

5      60.    EMPLOYER, by and through VELLIDO, Tim, and GILMORE perceived

6  PLAINTIFF to be disabled (COVID-19 and diabetes).

7      61.    PLAINTIFF'S protected status under FEHA is PLAINTIFF'S actual and perceived

8  and perceived disability (COVID-19 and diabetes and engaging in protected activities (requesting

9  and taking leave).

10     62.    When PLAINTIFF opposed practices forbidden by FEHA, opposed disability

11 discrimination and harassment and engaged in protected activities, PLAINTIFF had a protected

12 status pursuant to FEHA.

13     63.    EMPLOYER knew, perceived, and/or believed that PLAINTIFF had the

14 aforementioned protected status, described hereinabove. PLAINTIFF explicitly told store manager

15 VELLIDO he was diabetic, and hence part of a vulnerable population for COVID, told VELLIDO

16 he was ill with COVID symptoms, and told Tim and GILMORE that he had tested positive for

17 COVID-19. Further, Mr. Martinez told Tim on two occasions that PLAINTIFF was sick and was

18 showing COVID-19 symptoms.

19     64.    At all times mentioned in this complaint, PLAINTIFF could have and was able to

20 perform work for EMPLOYER competently and in a satisfactory manner.

21     65.    EMPLOYER made decisions adverse to PLAINTIFF in regards to compensation

22 and terms, conditions and privileges of employment to include but not limited to discriminating

23 against PLAINTIFF, retaliating against PLAINTIFF, terminating PLAINTIFF, PLAINTIFF was

24 treated differently than employees without the same protected status as PLAINTIFF, creating a

25 hostile work environment towards PLAINTIFF, failing to re-hire PLAINTIFF, failing to employ

26 PLAINTIFF, failing to re-instate PLAINTIFF, and subjecting PLAINTIFF to different terms,

27 conditions and privileges of employment.

28     66.    Due to PLAINTIFF'S protected status/association with someone with a protected

1  status and exercise of a reasonable accommodation, EMPLOYER subjected PLAINTIFF to

2  discrimination and retaliation, denying PLAINTIFF a workplace free of discrimination, and

3  retaliation, and terminating PLAINTIFF because of his protected class.

4      67.     PLAINTIFF'S actual and perceived disability, request for reasonable

5  accommodation, and exercise of a reasonable accommodation, was a substantial motivating factor

6  in EMPLOYER'S aforementioned decisions that were adverse to PLAINTIFF in regards to

7  compensation and terms, conditions and privileges of employment.

8      68.     As a direct, legal, and proximate cause of PLAINTIFF'S protected status and

9  exercise of reasonable accommodation, EMPLOYER discriminated against PLAINTIFF by

10  terminating his employment.

11      69.     As a direct and legal result of the acts and omissions of EMPLOYER, Plaintiff was

12  rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and/or

13  suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort

14  and/or anxiety.

15      70.     As a further legal result of the acts and omissions of EMPLOYER, Plaintiff has been

16  forced and/or will be forced to incur expenses for medical care, X-rays, and/or laboratory costs

17  during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that he

18  will in the future be forced to incur additional expenses of the same nature, all in an amount which

19  is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses

20  at the time of trial.

21      71.     As a further direct and legal result of the acts and conduct of EMPLOYER, Plaintiff

22  has been caused, and did suffer, and continues to suffer severe and permanent emotional and mental

23  distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety.

24  The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave

25  of court to assert the same when they are ascertained.

26      72.     The aforementioned acts of EMPLOYER, and each of them, were willful, wanton,

27  malicious, intentional, oppressive and/or despicable and were done in willful and conscious

28  disregard of the rights, welfare and safety of Plaintiff, and were done by officers, directors, and/or

1 | managerial agents and employees of EMPLOYER, and with the express knowledge, consent, and/or
2 | ratification of officers, directors, and/or managerial agents of EMPLOYER, thereby justifying the
3 | awarding of punitive and exemplary damages in an amount to be determined at the time of trial
4 | pursuant to California <u>Civil Code</u> § 3294(a) and (b).

5 |       73.    By the aforesaid acts and conduct of EMPLOYER, Plaintiff has been directly and
6 | legally caused to suffer actual damages pursuant to California <u>Civil Code</u> § 3333 including, but not
7 | limited to, loss of earnings and future earning capacity, medical and related expenses for care and
8 | procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently
9 | ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

10 |       74.    As a result of the acts of EMPLOYER, as alleged herein, Plaintiff is entitled to
11 | reasonable attorneys' fees and costs of said suit as specifically provided in California <u>Government</u>
12 | <u>Code</u> § 12965(b).

13 |       75.    The FEHA also provides remedies, including but not limited to, declaratory and
14 | injunctive relief. As such, Plaintiff is entitled to both declaratory and injunctive relief as a result of
15 | EMPLOYER'S unlawful conduct.

16 |       76.    Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

17 | **SECOND CAUSE OF ACTION**

18 | DISABILITY RETALIATION IN VIOLATION OF FEHA

19 | By Plaintiff Against EMPLOYER and DOES 1-30

20 |       77.    Plaintiff incorporates herein by reference and re-alleges each and every paragraph in
21 | this Complaint as though duly set forth in full herein.

22 |       78.    EMPLOYER employed at least five employees during all relevant time periods of
23 | Plaintiff's employment.

24 |       79.    Plaintiff was, at all times material hereto, a disabled employee (and one who engaged
25 | in legally protected conduct) and within a protected class covered by Cal. <u>Gov. Code</u> § 12940.

26 |       80.    EMPLOYER retaliated against Plaintiff as a result of (1) Plaintiff's actual and
27 | perceived disabilities, and (2) Plaintiff's request and use of a reasonable accommodation.

28 |       81.    EMPLOYER, retaliated against Plaintiff by terminating his employment, due to and

1    substantially motivated by Plaintiff's actual and perceived disabilities; requesting
2    accommodation/protected finite leave; and/or exercising his right to a reasonable
3    accommodation/taking protected finite leave. EMPLOYER has refused to rehire or reinstate
4    PLAINTIFF.

5        82.    In doing the acts alleged herein, EMPLOYER, and each of them, were substantially
6    motivated by Plaintiff's perceived disabilities; association with people with a disability; requesting
7    accommodation/protected finite leave; and/or exercising his right to a reasonable
8    accommodation/taking protected finite leave.

9        83.    At all times relevant herein, Plaintiff believes and further alleges that EMPLOYER
10   and/or its agents/representatives failed to timely, properly, and/or completely investigate the
11   retaliation Plaintiff was subjected to, and instead ratified and condoned the unlawful conduct.

12       84.    The acts and conduct of EMPLOYER, and each of them, as aforesaid, were in
13   violation of California Government Code §§ 12940 et seq. Said statutes impose certain duties upon
14   Defendants, and each of them, concerning retaliation against persons, such as Plaintiff, on the basis
15   of disabilities and the prohibition of actual/perceived disability retaliation. Said statutes were
16   intended to prevent the type of injury and damage herein set forth.

17       85.    By the acts and conduct described above, EMPLOYER, and each of them, in
18   violation of said statutes, knew about, or should have known about, and failed to investigate and/or
19   properly investigate, prevent or remedy the disability retaliation. When Plaintiff was retaliated
20   against, Plaintiff's disability and request for associated legal rights were substantial motivating
21   reasons and/or factors in EMPLOYER'S conduct.

22       86.    As a direct and legal result of the acts and omissions of EMPLOYER, Plaintiff was
23   rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and/or suffered,
24   among other things, numerous internal injuries, severe fright, shock, pain, discomfort and/or
25   anxiety.

26       87.    As a further legal result of the acts and omissions of EMPLOYER, Plaintiff has been
27   forced and/or will be forced to incur expenses for medical care, X-rays, and/or laboratory costs
28   during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that he

1  will in the future be forced to incur additional expenses of the same nature, all in an amount which
2  is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses
3  at the time of trial.

4      88.    As a further direct and legal result of the acts and conduct of EMPLOYER, Plaintiff
5  has been caused, and did suffer, and continues to suffer severe and permanent emotional and mental
6  distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety.
7  The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave
8  of court to assert the same when they are ascertained.

9      89.    The aforementioned acts of EMPLOYER, and each of them, were willful, wanton,
10  malicious, intentional, oppressive and/or despicable and were done in willful and conscious
11  disregard of the rights, welfare and safety of Plaintiff, and were done by officers, directors, and/or
12  managerial agents and employees of EMPLOYER, and with the express knowledge, consent, and/or
13  ratification of officers, directors, and/or managerial agents of EMPLOYER, thereby justifying the
14  awarding of punitive and exemplary damages in an amount to be determined at the time of trial
15  pursuant to California Civil Code § 3294(a) and (b).

16      90.    By the aforesaid acts and conduct of EMPLOYER, Plaintiff has been directly and
17  legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not
18  limited to, loss of earnings and future earning capacity, medical and related expenses for care and
19  procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently
20  ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

21      91.    As a result of the acts of EMPLOYER, as alleged herein, Plaintiff is entitled to
22  reasonable attorneys' fees and costs of said suit as specifically provided in California Government
23  Code § 12965(b).

24      92.    The FEHA also provides remedies, including but not limited to, declaratory and
25  injunctive relief. As such, Plaintiff is entitled to both declaratory and injunctive relief as a result of
26  EMPLOYER'S unlawful conduct.

27      93.    Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.
28

**THIRD CAUSE OF ACTION**

DISABILITY HARASSMENT IN VIOLATION OF FEHA

By Plaintiff Against EMPLOYER, VELLIDO, GILMORE, and DOES 1-30

94.     Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this Complaint as though duly set forth in full herein.

95.     At all times relevant herein, Plaintiff was an actual, perceived, and/or potentially disabled person within the meaning of Cal. Gov. Code §§ 12926.1(b) et seq., because he was a person with an actual, perceived, potentially disabling, and/or potentially disabling in the future physical/mental disability(ies) including, diabetes and COVID-19.

96.     On a severe and/or pervasive basis DEFENDANTS, and each of them, harassed Plaintiff due to and substantially motivated by Plaintiff's actual/perceived disabilities, need for accommodations, need for protected finite medical leave, and request for and use of protected leave through the following actions, among others:

    a.   Terminating PLAINTIFF'S employment;

    b.   Denying PLAINTIFF state-mandated sick time and forcing PLAINTIFF to work despite being sick with COVID-19 symptoms and being part of a vulnerable population because of his diabetes;

    c.   Forcing PLAINTIFF to work with employees showing COVID-19 symptoms when EMPLOYER knew PLAINTIFF was part of a population vulnerable to COVID-19 because he was diabetic;

    d.   Refusing to reinstate or re-hire PLAINTIFF.

97.     Plaintiff's protected status as stated above, and Plaintiff's disability, and/or opposition to practices forbidden by FEHA, as stated above, was a substantial motivating factor for the harassment of Plaintiff by DEFENDANTS.

98.     The aforementioned harassing and retaliatory conduct described hereinabove was unwelcome and sufficiently severe that it had the purpose and effect of altering the conditions of Plaintiff's employment and created an intimidating, hostile, abusive and offensive working environment for Plaintiff because of his disability, stated above, because he opposed practices

1    forbidden by FEHA, as stated above, and/or because of her protected status as stated above.

2        99.    The environment created by the aforementioned harassing conduct, described

3    hereinabove would have been perceived as intimidating, hostile, abusive, and offensive by a

4    reasonable person in the same positions as Plaintiff.

5        100.    The environment created by the aforementioned harassing conduct, described

6    hereinabove was perceived by Plaintiff as intimidating, hostile, abusive, and offensive.—

7        101.    Plaintiff further considered the work environment to be hostile or abusive toward

8    Plaintiff and other disabled individuals, and favorable to non-disabled individuals.

9        102.    In doing the acts alleged herein, DEFENDANTS, and each of them, were

10    substantially motivated by Plaintiff's disability, need for accommodations, and/or need for legally

11    protected finite medical leave.

12        103.    The acts and conduct of DEFENDANTS, and each of them, as aforesaid, were in

13    violation of Cal. Government Code §§ 12940 et seq. Said statutes impose certain duties upon

14    Defendants concerning harassment against persons, such as Plaintiff, on the basis of

15    actual/perceived disabilities and the prohibition of actual/perceived disability harassment. Said

16    statutes were intended to prevent the type of injury and damage herein set forth.

17        104.    By the acts and conduct described above, DEFENDANTS, and each of them, in

18    violation of said statutes, knew about, or should have known about, and failed to investigate and/or

19    properly investigate, prevent or remedy the disability harassment.

20        105.    As a direct and legal result of the acts and omissions of DEFENDANTS, Plaintiff

21    was rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and/or

22    suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort

23    and/or anxiety.

24        106.    As a further legal result of the acts and omissions of DEFENDANTS, Plaintiff has

25    been forced and/or will be forced to incur expenses for medical care, X-rays, and/or laboratory costs

26    during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that he

27    will in the future be forced to incur additional expenses of the same nature, all in an amount which

28    is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses

1    at the time of trial.

2      107.   As a further direct and legal result of the acts and conduct of DEFENDANTS,

3 Plaintiff has been caused, and did suffer, and continues to suffer severe and permanent emotional

4 and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or

5 anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray

6 leave of court to assert the same when they are ascertained.

7      108.   The aforementioned acts of DEFENDANTS, and each of them, were willful, wanton,

8 malicious, intentional, oppressive and/or despicable and were done in willful and conscious

9 disregard of the rights, welfare and safety of Plaintiff, and were done by officers, directors, and/or

10 managerial agents and employees of EMPLOYER, and with the express knowledge, consent, and/or

11 ratification of officers, directors, and/or managerial agents of EMPLOYER, thereby justifying the

12 awarding of punitive and exemplary damages in an amount to be determined at the time of trial

13 pursuant to California Civil Code § 3294(a) and (b).

14      109.   By the aforesaid acts and conduct of DEFENDANTS, Plaintiff has been directly and

15 legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not

16 limited to, loss of earnings and future earning capacity, medical and related expenses for care and

17 procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently

18 ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

19      110.   As a result of the acts of DEFENDANTS, as alleged herein, Plaintiff is entitled to

20 reasonable attorneys' fees and costs of said suit as specifically provided in California Government

21 Code § 12965(b).

22      111.   The FEHA also provides remedies, including but not limited to, declaratory and

23 injunctive relief. As such, Plaintiff is entitled to both declaratory and injunctive relief as a result of

24 EMPLOYER'S unlawful conduct.

25      112.   Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

26                      **FOURTH CAUSE OF ACTION**

27 FAILURE TO PREVENT DISCRIMINATION AND RETALIATION IN VIOLATION OF

28                                FEHA

PLAINTIFF'S COMPLAINT FOR DAMAGES

By Plaintiff Against EMPLOYER and DOES 1-30

113.    Plaintiff incorporates herein by reference and re-alleges each and every paragraph in this Complaint as though duly set forth in full herein.

114.    Under FEHA it is an unlawful practice for employers, labor organizations, and employment agencies to fail to maintain and preserve any and all applications, personnel, membership, or employment referral records and files for a minimum period of two years after the records and files are initially created or received, or for employers to fail to retain personnel files of applicants or terminated employees for a minimum period of two years after the date of the employment action taken.  Additionally, upon notice that a complaint against it has been filed with the Department of Fair Employment and Housing, any such employer, labor organization, or employment agency shall maintain and preserve any and all records and files until the complaint is fully and finally disposed of and all appeals or related proceedings terminated.

115.    Under FEHA all personnel or other employment records made or kept by any employer or other covered entity dealing with any employment practice and affecting any employment benefit of any applicant or employee (including all applications, personnel, membership or employment referral records or files) shall be preserved by the employer for a period of two years from the date of the making of the record or the date of the personnel action involved such as a termination, whichever occurs later.

116.    Under the Fair Employment and Housing Act ("FEHA"), Government Code section 12940 et. seq., it is an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring.  It is unlawful, under FEHA to aid, abet, incite, compel, or coerce the doing of any acts forbidden under FEHA, and/or attempt to do so.

117.    It is unlawful, under the Fair Employment and Housing Act ("FEHA"), Government Code section 12900 et seq., for an employer to fail to take immediate and appropriate corrective action to end unlawful discrimination.

118.    It is unlawful, under the Fair Employment and Housing Act ("FEHA"), Government Code section 12900 et seq., for an employer to fail to investigate a complaint by an employee

1  regarding FEHA violations as stated above.

2      119.    EMPLOYER failed to train its managers, including GILMORE, VELLIDO, and

3  Tim, supervisors, and/or human resource employees, of their duties and responsibilities under

4  FEHA as stated above.

5      120.    EMPLOYER failed to comply with its duties and responsibilities pursuant to FEHA

6  and related regulations as stated above.

7      121.    EMPLOYER knew and/or should have known of the aforementioned unlawful

8  retaliatory and/or discriminatory conduct, described hereinabove, all in violation of FEHA.

9      122.    EMPLOYER failed to take all reasonable steps necessary to prevent discrimination

10  and retaliation from occurring to plaintiff, all in violation of FEHA.

11      123.    EMPLOYER failed to investigate FEHA violations when it knew or should have

12  known they were occurring, all in violation of FEHA.

13      124.    EMPLOYER failed to maintain all employment records related to Plaintiff for two

14  years after his termination and/or after EMPLOYER was notified plaintiff had filed a complaint

15  against EMPLOYER with the Department of Fair Employment and Housing, and the failure to

16  maintain records was all in violation of FEHA.

17      125.    As a direct, foreseeable, and proximate result of EMPLOYER's conduct, as alleged

18  above, Plaintiff has suffered lost income, employment, and career opportunities, medical expenses

19  and has suffered and continues to suffer other economic loss, the precise amount of which will be

20  proven at trial.

21      126.    As a direct, foreseeable and proximate result of EMPLOYER's conduct, as alleged

22  above, Plaintiff has suffered and continues to suffer pain and suffering, great anxiety,

23  embarrassment, anger, loss of enjoyment of life, pain and suffering, and severe emotional distress,

24  the precise amount of which will be proven at trial.

25      127.    As a direct, foreseeable and proximate result of EMPLOYER s conduct, as alleged

26  above, Plaintiff has been damaged because he will not have records and evidence that Employer had

27  a duty to maintain, and/or had a duty to create, which would have supported Plaintiff's claims as

28  stated above, and would have been evidence at the trial in this matter.

1      128.    As a direct and legal result of the acts and omissions of EMPLOYER, Plaintiff was

2 rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and/or suffered,

3 among other things, numerous internal injuries, severe fright, shock, pain, discomfort and/or

4 anxiety.

5      129.    As a further legal result of the acts and omissions of EMPLOYER, Plaintiff has been

6 forced and/or will be forced to incur expenses for medical care, X-rays, and/or laboratory costs

7 during the period of Plaintiff's disability, and is informed and believes, and thereon alleges, that he

8 will in the future be forced to incur additional expenses of the same nature, all in an amount which

9 is at present unknown. Plaintiff will pray leave of court to show the exact amount of said expenses

10 at the time of trial.

11      130.    As a further direct and legal result of the acts and conduct of EMPLOYER, Plaintiff

12 has been caused, and did suffer, and continues to suffer severe and permanent emotional and mental

13 distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety.

14 The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave

15 of court to assert the same when they are ascertained.

16      131.    The aforementioned acts of EMPLOYER, and each of them, were willful, wanton,

17 malicious, intentional, oppressive and/or despicable and were done in willful and conscious

18 disregard of the rights, welfare and safety of Plaintiff, and were done by officers, directors, and/or

19 managerial agents and employees of EMPLOYER, and with the express knowledge, consent, and/or

20 ratification of officers, directors, and/or managerial agents of EMPLOYER, thereby justifying the

21 awarding of punitive and exemplary damages in an amount to be determined at the time of trial

22 pursuant to California Civil Code § 3294(a) and (b).

23      132.    By the aforesaid acts and conduct of EMPLOYER, Plaintiff has been directly and

24 legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but not

25 limited to, loss of earnings and future earning capacity, medical and related expenses for care and

26 procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently

27 ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

28      133.    As a result of the acts of EMPLOYER, as alleged herein, Plaintiff is entitled to

1 | reasonable attorneys' fees and costs of said suit as specifically provided in California <u>Government</u>

2 | <u>Code</u> § 12965(b).

3 |     134.    The FEHA also provides remedies, including but not limited to, declaratory and

4 | injunctive relief. As such, Plaintiff is entitled to both declaratory and injunctive relief as a result of

5 | EMPLOYER'S unlawful conduct.

6 |     135.    Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

7 | **FIFTH CAUSE OF ACTION**

8 | NEGLIGENT HIRING AND RETENTION

9 | By Plaintiff Against EMPLOYER, GILMORE, VELLIDO, and DOES 1-30

10 |     136.    Plaintiff incorporates herein by reference and re-alleges each and every paragraph in

11 | this Complaint as though duly set forth in full herein.

12 |     137.    An employer can be held liable under common law for the negligent hiring and

13 | retention of an employee.

14 |     138.    Under common law, an employer or supervisor/manager is liable for negligent

15 | hiring and/or retention of an employee based upon the their actual or constructive knowledge that

16 | hiring and/or retaining an employee created a particular risk or hazard and that particular harm

17 | actually materialized.

18 |     139.    At all times mentioned in this Complaint, DEFENDANTS held and exercised their

19 | authority to hire, retain, supervise, train/instruct, and discipline EMPLOYER'S employees.

20 |     140.    DEFENDANTS owed PLAINTIFF, as well as other employees, a duty of care to

21 | properly hire, supervise, train/instruct, and discipline its management and employees in order to

22 | provide and maintain a safe workplace free from preventable injuries, harassment, discrimination,

23 | retaliation, Labor Code violations, and Cal/OSHA violations.

24 |     141.    DEFENDANTS breached their duty of care by negligently hiring, retaining,

25 | supervising, and/or training/instructing, its management team and its human resources personnel.

26 |     142.    At all times mentioned in this Complaint, DEFENDANTS negligently and

27 | carelessly hired, retained, and/or trained/instructed its employees. DEFENDANTS breached their

28 | duty to exercise reasonable care, and acted negligently and carelessly in the training, supervision,

1  and discipline of their employees by failing to provide proper training on (1) disability retaliation

2  and discrimination as required by the FEHA; (2) disability accommodations as required by the

3  FEHA; (3) Cal/OSHA codes and regulations pertaining to COVID-19; and (4) the California Labor

4  Code pertaining COVID-19.

5       143.    DEFENDANTS had actual or constructive knowledge that their employees engaged

6  in discrimination and retaliation against PLAINTIFF and others in violation of the FEHA, as well

7  as violations of Cal/OSHA and Labor Code regulations pertaining to COVID-19.

8       144.    DEFENDANTS had actual or constructive knowledge that Plaintiff and other

9  protected employees were denied a safe workplace free from preventable injury, discrimination,

10 retaliation, and violations the California Labor Code and Cal/OSHA.

11      145.    The herein mentioned unlawful conduct and violations by EMPLOYER'S

12 management and human resources staff, occurred on a regular, open, and notorious basis such that

13 DEFENDANTS were aware of its occurrence.

14      146.    Notwithstanding DEFENDANTS' actual or constructive notice of its management

15 team and human resources department's propensity to discriminate, harass, retaliate, violate public

16 policy, and violate Cal/OSHA and Labor Code regulations, and of their actual discrimination,

17 harassment, retaliation and violation of public policy, Labor Code regulations, and Cal/OSHA

18 regulations, DEFENDANTS did nothing to prevent the unlawful conduct from occurring.

19      147.    DEFENDANTS failed to take prompt and appropriate remedial steps to correct the

20 ongoing discrimination, harassment, retaliation and violation of public policy, Labor Code

21 regulations, and Cal/OSHA regulations.

22      148.    DEFENDANTS' breach of duty proximately caused PLAINTIFF to suffer special

23 and general damages.

24      149.    At all times material herein, DEFENDANTS knew or reasonably should have

25 known, that unless DEFENDANTS intervened to protect PLAINTIFF, as well as other employees,

26 and to adequately supervise, prohibit, control, regulate, discipline and/or otherwise penalize the

27 conduct of employees for violations of FEHA, the Labor Code, Cal/OSHA, and public policy, as

28 alleged herein, said discrimination, retaliation, and violations of the Labor Code and of Cal/OSHA

PLAINTIFF'S COMPLAINT FOR DAMAGES

1  would continue, thereby subjecting PLAINTIFF, as well as other employees, to damages, including

2  personal injury and emotional distress.

3      150.    DEFENDANTS' failure to so hire, supervise, prohibit, train, retain, control,

4  regulate, discipline, terminate and/or otherwise penalize its employees that committed FEHA,

5  Labor Code, and Cal/OSHA violations would have the effect of encouraging, ratifying, condoning,

6  exacerbating, increasing and worsening said unlawful conduct.

7      151.    At all times material herein, DEEFENDANTS had the power, ability, authority, and

8  duty to so intervene, supervise, prohibit, control, regulate, discipline, terminate and/or otherwise

9  penalize the conduct of the management team and human resources staff members that committed

10  the violations.

11      152.    As a direct, foreseeable, and proximate result of DEFENDANTS' negligent

12  conduct, PLAINTIFF has suffered lost income, employment, medical expenses, and career

13  opportunities, and has suffered and continues to suffer other economic loss, the precise amount of

14  which will be proven at trial.

15      153.    As a direct and legal result of the acts and omissions of DEEFENDANTS, Plaintiff

16  was rendered sick, sore, lame, disabled and/or disordered, both internally and externally, and/or

17  suffered, among other things, numerous internal injuries, severe fright, shock, pain, discomfort

18  and/or anxiety.

19      154.    As a further legal result of the acts and omissions of DEEFENDANTS, Plaintiff has

20  been forced and/or will be forced to incur expenses for medical care, X-rays, and/or laboratory

21  costs during the period of Plaintiff's disability, and is informed and believes, and thereon alleges,

22  that he will in the future be forced to incur additional expenses of the same nature, all in an amount

23  which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said

24  expenses at the time of trial.

25      155.    As a further direct and legal result of the acts and conduct of DEEFENDANTS,

26  Plaintiff has been caused, and did suffer, and continues to suffer severe and permanent emotional

27  and mental distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or

28

1  anxiety. The exact nature and extent of said injuries is presently unknown to Plaintiff, who will

2  pray leave of court to assert the same when they are ascertained.

3      156.    The aforementioned acts of DEEFENDANTS, and each of them, were willful,

4  wanton, malicious, intentional, oppressive and/or despicable and were done in willful and

5  conscious disregard of the rights, welfare and safety of Plaintiff, and were done by officers,

6  directors, and/or managerial agents and employees of DEEFENDANTS, and with the express

7  knowledge, consent, and/or ratification of officers, directors, and/or managerial agents of

8  DEEFENDANTS, thereby justifying the awarding of punitive and exemplary damages in an

9  amount to be determined at the time of trial pursuant to California Civil Code § 3294(a) and (b).

10     157.    By the aforesaid acts and conduct of DEEFENDANTS, Plaintiff has been directly

11  and legally caused to suffer actual damages pursuant to California Civil Code § 3333 including, but

12  not limited to, loss of earnings and future earning capacity, medical and related expenses for care

13  and procedures both now and in the future, attorneys' fees, and other pecuniary loss not presently

14  ascertained, for which Plaintiff will seek leave of court to amend when ascertained.

15     158.    As a result of the unlawful acts of DEFENDANTS, and each of them, as alleged

16  herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically

17  provided in Cal. C.C.P. § 1021.5. Plaintiff's action enforces important rights affecting the public

18  interest by bringing forth this lawsuit to ensure Defendants refrain from intentionally inflicting

19  emotional distress on others (employees/coworkers), thereby conferring a significant benefit on the

20  general public's health and well-being as a result. The necessity and financial burden of this private

21  enforcement, as well as the interest of justice, entitles Plaintiff to reasonable attorneys' fees and

22  costs under Cal. C.C.P. § 1021.5.

23     159.    Plaintiff has been damaged in an amount within the jurisdictional limits of this

24  Court.

25                        **SIXTH CAUSE OF ACTION**

26         RETALIATION/WONGRUL TERMINATION IN VIOLATION OF PUBLIC POLICY

27                   By PLAINTIFF Against EMPLOYER and Does 1-30

28

1     160.    PLAINTIFF incorporates herein by reference and re-alleges each and every paragraph
2  in this Complaint as though duly set forth in full herein.

3     161.    At all times herein mentioned, the public policy of the State of California, as codified,
4  expressed and mandated by California <u>Government Code</u> §§ 12920 and 12940 et seq., was to prohibit
5  employers from:

6              (a)    Harassing, discriminating, and retaliating against and/or wrongfully
7                     terminating any individual on the grounds of their actual/perceived disability,
8                     or association with individuals within that protected class or characteristic, or
9                     for using or requesting a reasonable accommodation for a disability.

10  This public policy of the State of California is designed to protect all employees and to promote the
11  welfare and well-being of the community at large. The policy inures to the benefit of the public and
12  is fundamental and substantial.

13     162.    At all times herein mentioned, the public policy of the State of California, as codified,
14  expressed and mandated by California <u>Labor Code</u> section 6409.6(f) was to prohibit employers,
15  including EMPLOYER, from retaliating against a worker for disclosing a positive COVID-19 test
16  or diagnosis or order to quarantine or isolate. This public policy of the State of California is designed
17  to protect all employees and to promote the welfare and well-being of the community at large. The
18  policy inures to the benefit of the public and is fundamental and substantial.

19     163.    At all times herein mentioned, the public policy of the State of California, as codified,
20  expressed and mandated by California <u>Labor Code</u> section 248.2 was to mandate employers,
21  including EMPLOYER, to provide up to 80 hours' worth of supplemental paid sick leave to
22  employees needing to quarantine or isolate due to experiencing symptoms related to COVID-19 and
23  seeking medical diagnosis, or advised by a health care provider to self-quarantine due to concerns
24  related to COVID-19, among other things. This public policy of the State of California is designed
25  to protect all employees and to promote the welfare and well-being of the community at large. The
26  policy inures to the benefit of the public and is fundamental and substantial.

27     164.    At all times herein mentioned, the public policy of the State of California, as codified,
28  expressed and mandated by California <u>Labor Code</u> section 246.5 was to prohibit employers,

including EMPLOYER, from discharging or discriminating against an employee for using accrued sick days or attempting to exercise the right to use accrued sick days. This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the community at large. The policy inures to the benefit of the public and is fundamental and substantial.

165.   At all times herein mentioned, the public policy of the State of California, as codified, expressed and mandated by California Occupational Safety and Health Regulations ("Cal/OSHA") section 3205(c) was to mandate employers to:

Establish, implement, and maintain an effective, written COVID-19 Prevention Program, which may be integrated into the employer's Injury and Illness Prevention Program required by section 3203, or be maintained in a separate document. The written elements of a COVID-19 Prevention Program shall include:

(1) System for communicating. The employer shall do all of the following in a form readily understandable by employees:

(A) Ask employees to report to the employer, without fear of reprisal, COVID-19 symptoms, possible close contacts, and possible COVID-19 hazards at the workplace.

(B) Describe how employees with medical or other conditions that put them at increased risk of severe COVID-19 illness can request accommodations.

(C) Provide information about access to COVID-19 testing as described in subsection (c)(5)(I) when testing is required under this section, section 3205.1, or section 3205.2.

(D) In accordance with subsection (c)(3)(B), communicate information about COVID-19 hazards and the employer's COVID-19 policies and procedures to employees and to other employers, persons, and entities within or in contact with the employer's workplace.

(2) Identification and evaluation of COVID-19 hazards.

(A) The employer shall allow for employee and authorized employee representative participation in the identification and evaluation of COVID-19 hazards.

(B) The employer shall develop and implement a process for screening employees for and responding to employees with COVID-19 symptoms. The employer may ask employees to evaluate their own symptoms before reporting to work. If the employer conducts screening indoors at the workplace, the employer shall ensure that face coverings are used during screening by both screeners and

employees who are not fully vaccinated and, if temperatures are measured, that non-contact thermometers are used.

(C) The employer shall develop COVID-19 policies and procedures to respond effectively and immediately to individuals at the workplace who are a COVID-19 case to prevent or reduce the risk of transmission of COVID-19 in the workplace.

(D) The employer shall conduct a workplace-specific identification of all interactions, areas, activities, processes, equipment, and materials that could potentially expose employees to COVID-19 hazards. Employers shall treat all persons, regardless of symptoms or negative COVID-19 test results, as potentially infectious.

...

(9) Exclusion of COVID-19 cases and employees who had a close contact. The purpose of this subsection is to limit transmission of COVID-19 in the workplace.

(A) Employers shall ensure that COVID-19 cases are excluded from the workplace until the return to work requirements of subsection (c)(10) are met.

(B) Employers shall exclude from the workplace employees who had a close contact until the return to work requirements of subsection (c)(10) are met, with the following exceptions:

1. Employees who were fully vaccinated before the close contact and who do not develop COVID-19 symptoms; and

2. COVID-19 cases who returned to work pursuant to subsection (c)(10)(A) or (B) and have remained free of COVID-19 symptoms, for 90 days after the initial onset of COVID-19 symptoms or, for COVID-19 cases who never developed COVID-19 symptoms, for 90 days after the first positive test.

(C) For employees excluded from work under subsection (c)(9), employers shall continue and maintain an employee's earnings, wages, seniority, and all other employee rights and benefits, including the employee's right to their former job status, as if the employee had not been removed from their job. Employers may use employer-provided employee sick leave for this purpose to the extent permitted by law. Wages due under this subsection are subject to existing wage payment obligations and must be paid at the employee's regular rate of pay no later than the regular pay day for the pay period(s) in which the employee is excluded. Unpaid wages owed under this subsection are subject to enforcement through procedures available in existing law. If an employer determines that one of the exceptions below applies, it shall inform the employee of the denial and the applicable exception.

EXCEPTION 1: Subsection (c)(9)(C) does not apply where the employee received disability payments or was covered by workers' compensation and received temporary disability.

EXCEPTION 2: Subsection (c)(9)(C) does not apply where the employer demonstrates that the close contact is not work related.

(D) Subsection (c)(9) does not limit any other applicable law, employer policy, or collective bargaining agreement that provides for greater protections.

(E) At the time of exclusion, the employer shall provide the employee the information on benefits described in subsections (c)(5)(B) and (c)(9)(C).

(10) Return to work criteria.

(A) COVID-19 cases with COVID-19 symptoms shall not return to work until:

1. At least 24 hours have passed since a fever of 100.4 degrees Fahrenheit or higher has resolved without the use of fever-reducing medications; and

2. COVID-19 symptoms have improved; and

3. At least 10 days have passed since COVID-19 symptoms first appeared.

(B) COVID-19 cases who tested positive but never developed COVID-19 symptoms shall not return to work until a minimum of 10 days have passed since the date of specimen collection of their first positive COVID-19 test.

(D) Once a COVID-19 case has met the requirements of subsection (c)(10)(A) or

(B), as applicable, a negative COVID-19 test shall not be required for an employee to return to work.

(E) Persons who had a close contact may return to work as follows:

1. Persons who had a close contact but never developed any COVID-19 symptoms may return to work when 10 days have passed since the last known close contact.

2. Persons who had a close contact and developed any COVID-19 symptom cannot return to work until the requirements of subsection (c)(10)(A) have been met, unless all of the following are true:

a. The person tested negative for COVID-19 using a polymerase chain reaction (PCR) COVID-19 test with specimen taken after the onset of symptoms; and

b. At least 10 days have passed since the last known close contact; and

c. The person has been symptom-free for at least 24 hours, without using fever-reducing medications.

. . .

(E) If an order to isolate, quarantine, or exclude an employee is issued by a local or state health official, the employee shall not return to work until the period of isolation

or quarantine is completed or the order is lifted. If no period was specified, then the period shall be in accordance with the return to work periods in subsection (c)(10)(A), (c)(10)(B), or (c)(10)(D), as applicable.

This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the community at large. The policy inures to the benefit of the public and is fundamental and substantial.

166.    At all times herein mentioned, the public policy of the State of California, as codified, expressed and mandated by California Occupational Safety and Health Regulations ("Cal/OSHA") section 3205.1(d) was to mandate employers to do the following if three or more employee COVID-19 cases within an exposed group, as defined by section 3205(b) visited the workplace during their high-risk exposure period at any time during a 14-day period until there are no new COVID-19 cases detected in the exposed group for a 14-day period:

(b) COVID-19 testing.

(1) The employer shall make COVID-19 testing available at no cost to its employees within the exposed group, during employees' paid time, except:

(A) Employees who were not present at the workplace during the relevant 14-day period(s) under subsection (a).

(B) Employees who were fully vaccinated before section 3205.1 became applicable to the workplace and who do not have COVID-19 symptoms.

(C) For COVID-19 cases who did not develop COVID-19 symptoms after returning to work pursuant to subsections 3205(c)(10)(A) or (B), no testing is required for 90 days after the initial onset of COVID-19 symptoms or, for COVID-19 cases who never developed symptoms, 90 days after the first positive test.

(2) COVID-19 testing shall consist of the following:

(A) Immediately upon being covered by this section, testing shall be made available to all employees in the exposed group and then again one week later. Negative COVID-19 test results of employees with COVID-19 exposure shall not impact the duration of any quarantine, isolation, or exclusion period required by, or orders issued by, the local health department.

(B) After the first two COVID-19 tests required by subsection (b)(2)(A), employers shall make COVID-19 testing available once a week at no cost, during paid time, to all employees in the exposed group who remain at the workplace, or more frequently if recommended by the local health department, until this section no longer applies pursuant to subsection (a)(2).

(b)    Employers shall make additional testing available at no cost to employees, during employees' paid time, when deemed necessary by the Division through the Issuance of Order to Take Special Action, in accordance with title 8, section 332.3.

(c)    The employer shall continue to comply with all applicable provisions of section 3205, and shall also do the following:

(1) Employees in the exposed group shall wear face coverings when indoors, or when outdoors and less than six feet from another person, unless one of the exceptions in subsection 3205(c)(6)(D) applies.

(2) Employers shall give notice to employees in the exposed group of their right to request a respirator for voluntary use under subsection 3205(c)(7)(D)2., if they are not fully vaccinated.

(3) Employers shall evaluate whether to implement physical distancing of at least six feet between persons or, where six feet of physical distancing is not feasible, the use of cleanable solid partitions of sufficient size to reduce COVID-19 transmission.

(d)    COVID-19 Investigation, review and hazard correction. The employer shall immediately perform a review of potentially relevant COVID-19 policies, procedures, and controls and implement changes as needed to prevent further spread of COVID-19. The investigation and review shall be documented and include:

(1) Investigation of new or unabated COVID-19 hazards including the employer's leave policies and practices and whether employees are discouraged from remaining home when sick; the employer's COVID-19 testing policies; insufficient outdoor air; insufficient air filtration; and lack of physical distancing.

(2) The review shall be updated every 30 days that this section continues to apply, in response to new information or to new or previously unrecognized COVID-19 hazards, or when otherwise necessary.

(3) The employer shall implement changes to reduce the transmission of COVID-19 based on the investigation and review required by subsections (e)(1) and (e)(2). The employer shall consider moving indoor tasks outdoors or having them performed remotely, increasing outdoor air supply when work is done indoors, improving air filtration, increasing physical distancing as much as feasible, requiring respiratory protection in compliance with section 5144, and other applicable controls.

(f) In buildings or structures with mechanical ventilation, employers shall filter recirculated air with Minimum Efficiency Reporting Value (MERV) 13 or higher efficiency filters if compatible with the ventilation system. If MERV-13 or higher filters are not compatible with the ventilation system, employers shall use filters with the highest compatible filtering efficiency. Employers shall also evaluate whether portable or mounted High Efficiency Particulate Air (HEPA) filtration units or other air cleaning systems would reduce the risk of transmission and, if so, shall implement their use to the degree feasible.

PLAINTIFF'S COMPLAINT FOR DAMAGES

This public policy of the State of California is designed to protect all employees and to promote the welfare and well-being of the community at large. The policy inures to the benefit of the public and is fundamental and substantial.

167.    The FEHA, Labor Codes, and CalOSHA regulations, as stated above, constitute and embody fundamental, substantial, and well-established California public policy.  Accordingly, when employees assert rights under the FEHA, Labor Codes, and CalOSHA, and their complimentary regulations, the employee has a protected status pursuant to the FEHA, the Labor Codes, and CalOSHA, and also California public policy.

168.    Therefore, because EMPLOYER made decisions adverse to PLAINTIFF in regards to compensation and terms, conditions and privileges of employment, including but not limited to, discriminating against PLAINTIFF, retaliating against PLAINTIFF, terminating PLAINTIFF all because of (1) PLAINTIFF'S perceived disability; (2) association with a disability; (3) quarantining/isolating due to his exposure to COVID-19 and symptoms as a result of DEFENDANTS' willful an intentional violations of all the provisions contained in (a) Labor Code sections 248.2 and 6409.6, and (b) Cal/OSHA sections 3205 and 3205.1, provided above; (4) using accrued, state-mandated sick time; using a reasonable accommodation for his perceived disability, EMPLOYER'S decisions adverse to PLAINTIFF were wrongful and violated California and federal public policy.

169.    Therefore, because EMPLOYER made decisions adverse to PLAINTIFF in regards to compensation and terms, conditions and privileges of employment, substantially motivated by the reasons above, EMPLOYER'S decisions adverse to PLAINTIFF were wrongful and violated California public policy. The adverse actions of EMPLOYER, including the wrongful termination of PLAINTIFF, on the grounds alleged and described herein, were wrongful, in violation of public policy, and hinder the welfare and well-being of the community at large.

170.    As a direct, foreseeable, and proximate result of EMPLOYER'S conduct, as alleged above, PLAINTIFF has suffered lost income and benefits, incurred medical expenses, and lost career opportunities, and has suffered and continues to suffer other economic loss, the precise

1 | amount of which will be proven at trial.

2 |     171.    As a direct, foreseeable and proximate result of EMPLOYER'S conduct, as alleged

3 | above, PLAINTIFF has suffered and continues to suffer great anxiety, embarrassment, anger, loss

4 | of enjoyment of life, pain and suffering, and severe emotional distress, the precise amount of which

5 | will be proven at trial.

6 |     172.    The conduct which PLAINTIFF complains of in this complaint, and which is alleged

7 | above, was carried out by the EMPLOYE willfully, intentionally, and with oppression, malice and

8 | fraud and was carried out with conscious disregard of PLAINTIFF'S rights as and as such

9 | PLAINTIFF is entitled to an award of exemplary damages according to proof. The aforementioned

10 | conducted on which punitive damages is alleged, as described hereinabove, was done with the

11 | advance knowledge by an officer, director and/or managing agent of EMPLOYER, of the unfitness

12 | of the employee, and the employee was employed with a conscious disregard of the rights and/or

13 | safety or others. The aforementioned conducted on which punitive damages is alleged, as described

14 | hereinabove, was authorized, ratified and/or committed by an officer, director, and/or managing

15 | agent of EMPLOYER.

16 |     173.    PLAINTIFF had to employ an attorney to prosecute this action and has thereby

17 | incurred costs and attorney fees. Such attorneys' fees and costs are necessary for the prosecution of

18 | this action for which PLAINTIFF is entitled to an award of attorneys' fees and costs in an amount

19 | according to proof, including pursuant to CCP § 1021.5 et. seq. and Government Code section

20 | 12965.

21 |     174.    PLAINTIFF seeks declaratory relief that PLAINTIFF'S rights under the public

22 | policy were violated, that EMPLOYER violated the public policy, that training and education of

23 | EMPLOYER needs to occur in order for it to comply with the public policy, and other forms of

24 | declaratory relief.

25 |     175.    PLAINTIFF seeks injunctive and/or declaratory relief and any other remedies they

26 | are entitled to under the law pursuant to the claims alleged in this complaint.

27 | **SEVENTH CAUSE OF ACTION**

28 | VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200, ET SEQ.

PLAINTIFF'S COMPLAINT FOR DAMAGES

1    By Plaintiff Against EMPLOYER

2        176.   Plaintiff incorporates herein by reference and re-alleges each and every paragraph in

3    this Complaint as though duly set forth in full herein.

4        177.   Plaintiff brings this cause of action on behalf of themselves as a private attorney

5    general and on behalf of members of the general public pursuant to Section 17200 et seq., of the

6    Business and Professions Code, and the laws of equity.  The conduct of EMPLOYER engaged in as

7    alleged above has been, and continues to be, deleterious to the general public.  Plaintiff is seeking

8    to enforce important rights affecting the public interest within the meaning of Code of Civil

9    Procedure § 1021.5, and requests injunctive and equitable relief as the Court deems appropriate.

10       178.   Plaintiff is informed and believes and on that basis, alleges that EMPLOYER and

11   DOES 1-30, and each of them, have engaged, continue to engage, and will continue to engage in a

12   pattern of unlawful and unethical conduct, as stated above, including violations of Cal/OSHA

13   sections 3205 and 3205.1, and the fraudulent, deceitful, deceptive, and abusive practices and

14   conduct, as stated above, and as to EMPLOYER'S violation, and as to violations by

15   EMPLOYER'S employees, of laws, statutes, ordinances, regulations and/or codes as stated above.

16   Further, EMPLOYER has never taken adequate measures to remedy its unlawful conduct and

17   fraudulent, deceitful, deceptive, and abusive practices and conduct, as stated above.

18       179.   EMPLOYER knew or reasonably should have known that its employees,

19   supervisors, and managers, engaged in unlawful, fraudulent, deceitful, and/or abusive, conduct as

20   stated above, and failed to do anything to prevent the conduct and practices, and instead retaliated

21   against Plaintiff for exercising his rights under the law.

22       180.   EMPLOYER violated the public policies contained in numerous statutes, codes,

23   regulations, and ordinances, as stated above, and EMPLOYER failed to remedy the violations.

24       181.   All EMPLOYER'S employees who failed to act to comply with the law and prevent

25   the unlawful, fraudulent, deceitful, and/or abusive, conduct as stated above, without proper training

26   will continue to do so.

27       182.   EMPLOYER'S actions and failures to act, as described above, constitute an ongoing

28   and continuous unfair business practice, and unless restrained from doing so, EMPLOYER will

PLAINTIFF'S COMPLAINT FOR DAMAGES

1  continue to engage in said unfair business practices and/or fail to remedy conditions creating unfair

2  business practices. Thus, EMPLOYER'S conduct and practices will continue to harm and damage

3  the general public.

4      183.    EMPLOYER'S business practices as stated above, injured and harmed the general

5  public, including PLAINTIFF, and will continue to cause injury to the general public who has no

6  adequate remedy at law. Relief for damages alone for EMPLOYER'S continuing unlawful

7  business practices would require a multiplicity of lawsuits.

8      184.    As a direct, foreseeable and proximate result of EMPLOYER'S conduct, as alleged

9  above, damages will continue to the general public without appropriate injunctive and equitable

10  relief.

11      185.    Plaintiff requests that EMPLOYER be ordered to comply with all provisions of the

12  laws which PLAINTIFF alleges it has and continues to violate, and be enjoined from operating at

13  the facility where Plaintiff was employed until its employees receive the necessary training, and

14  EMPLOYER has offered sufficient guarantees, which will result in the cessation of the unlawful,

15  fraudulent, unethical, deceitful, and/or abusive, conduct as stated above.

16      186.    Plaintiff requests damages and/or restitution of all monies and profits from its unfair

17  business practices to be disgorged from EMPLOYER and returned to affected parties, including

18  PLAINTIFF.

19      187.    Plaintiff has had to employ an attorney to prosecute this action and has thereby

20  incurred costs and attorney fees. Such attorneys' fees and costs are necessary for the prosecution of

21  this action for which Plaintiff is entitled to an award of attorneys' fees and costs in an amount

22  according to proof pursuant to C.C.P. § 1021.5 and/or the private attorney general doctrine.

23                      **EIGHTH CAUSE OF ACTION**

24              INTENTIONAL INFLICATION OF EMOTIONAL DISTRESS

25          By Plaintiff Against EMPLOYER, VELLIDO, GILMORE, and Does 1-30

26      188.    Plaintiff incorporates herein by reference and re-alleges each and every paragraph in

27  this Complaint as though duly set forth in full herein.

28      189.    The aforesaid conduct of DEFENDANTS, and each of them, was so extreme and

1 outrageous as to exceed all bounds of that usually tolerated in a civilized society, and intended to

2 cause, or DEFENDANTS acted with reckless disregard of the probability that PLAINTIFF would

3 suffer emotional distress, and actually did cause Plaintiff to suffer severe emotional distress. This

4 conduct was carried out by O'REILLY employees and managing agents, VELLIDO, GILMORE,

5 and Tim, and includes but is not limited to the following:

6         a. Terminating PLAINTIFF'S employment;

7         b. Denying PLAINTIFF state-mandated sick time and forcing PLAINTIFF to work

8             despite being sick with COVID-19 symptoms and being part of a vulnerable

9             population because of his diabetes;

10         c. Forcing PLAINTIFF to work with employees showing COVID-19 symptoms

11             when EMPLOYER knew PLAINTIFF was part of a population vulnerable to

12             COVID-19 because he was diabetic;

13     190. DEFENDANTS, and each of them, intended to cause and did cause Plaintiff severe

14 emotional distress, as a result of the aforesaid unlawful conduct.

15     191. Plaintiff did not consent to DEFENDANTS' conduct, as herein alleged, and said

16 conduct was unprivileged. DEFENDANTS conduct caused Plaintiff to suffer severe emotional

17 distress.

18     192. DEFENDANTS' conduct continues to cause Plaintiff to suffer severe emotional

19 distress.

20     193. Further, at all times relevant herein, Kenzie Hogan, Brad Trimble, and Ray Gamboa

21 were directors, officer,s and/or managing agents of HOGAN, and in doing the acts alleged herein,

22 were acting within the course and scope of their employment with HOGAN.

23     194. As a direct and legal result of the acts and omissions of DEFENDANTS and DOES

24 1 through 30, and each of them, Plaintiff was rendered sick, sore, lame, disabled and/or disordered,

25 both internally and/or externally, and suffered, among other things, emotional distress, including

26 but not limited to shock, pain, discomfort and/or anxiety.

27     195. As a further legal result of the acts and omissions of DEFENDANTS and each of

28 them, Plaintiff has been forced to incur expenses for medical care, X-rays, and/or laboratory costs

1  during the period of Plaintiff's disability, and is informed and believes, and/or thereon alleges, that

2  Plaintiff will in the future be forced to incur additional expenses of the same nature, all in an amount

3  which is at present unknown. Plaintiff will pray leave of court to show the exact amount of said

4  expenses at the time of trial.

5  196.    As a further direct and legal result of the acts of DEFENDANTS, Plaintiff has been

6  caused, and did suffer, and continues to suffer severe and/or permanent emotional and/or mental

7  distress and anguish, humiliation, embarrassment, fright, shock, pain, discomfort and/or anxiety.

8  The exact nature and extent of said injuries is presently unknown to Plaintiff, who will pray leave

9  of court to assert the same when they are ascertained.

10  197.    The aforementioned acts of DEFENDANTS, and each of them, were willful, wanton,

11  malicious, intentional, oppressive and despicable and were done in willful and conscious disregard

12  of the rights, welfare and safety of Plaintiff, and were done by managing agents and employees of

13  Defendants, including VELLIDO, GILMORE, and Tim, and with the express knowledge, consent,

14  and ratification of managing agents and employees of O'REILLY'S, thereby justifying the awarding

15  of punitive and exemplary damages in an amount to be determined at the time of trial pursuant to

16  Cal. Civil Code § 3294(a) and (b).

17  198.    By the aforesaid acts and conduct of DEFENDANTS, and each of them, Plaintiff has

18  been directly and legally caused to suffer actual damages pursuant to California Civil Code § 3333

19  including, but not limited to, loss of earnings and future earning capacity, medical and related

20  expenses for care and procedures both now and in the future, attorneys' fees, and other pecuniary

21  loss not presently ascertained, for which Plaintiff will seek leave of court to amend when

22  ascertained.

23  199.    As a result of the unlawful acts of DEFENDANTS, and each of them, as alleged

24  herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as specifically provided

25  in Cal. C.C.P. § 1021.5. Plaintiff's action enforces important rights affecting the public interest by

26  bringing forth this lawsuit to ensure Defendants refrain from intentionally inflicting emotional

27  distress on others (employees/coworkers), thereby conferring a significant benefit on the general

28  public's health and well-being as a result. The necessity and financial burden of this private

1  enforcement, as well as the interest of justice, entitles Plaintiff to reasonable attorneys' fees and

2  costs under Cal. C.C.P. § 1021.5.

3    200.    Plaintiff has been damaged in an amount within the jurisdictional limits of this Court.

4    **PRAYER FOR RELIEF**

5    PLAINTIFF seeks judgment against EMPLOYER as follows:

6    1.    For special damages, including actual, consequential and incidental losses including,

7        but not limited to, unpaid wages, medical bills, past, present and future loss of

8        earnings and benefits, front-pay and benefits, back pay and benefits, all according to

9        proof, all together with prejudgment interest;

10    2.    For general damages according to proof;

11    3.    For all punitive damages against each defendant in an amount deemed proper by this

12        court;

13    4.    For restitution pursuant to Business and Professions Code section 17200, et seq.;

14    5.    For reasonable attorneys' fees;

15    6.    For costs of suit; and

16    7.    For such other and further relief as this Court deems proper.

17

18  Dated:  October 24, 2022                    **THE RAMIREZ LEGAL GROUP**

19

20                                    By: _____

21                                        APRIL RAMIREZ, ESQ.
                                        Attorneys for Plaintiff,
22                                        THEODORE HATLESTAD

23

24

25

26

27

28

PLAINTIFF'S COMPLAINT FOR DAMAGES

1

## <u>DEMAND FOR JURY TRIAL</u>

2     PLAINTIFF hereby demands a trial by jury on all causes of action.

3

4   Dated:  October 24, 2022                **THE RAMIREZ LEGAL GROUP**

5

6                                           By: _____

7                                           APRIL RAMIREZ, ESQ.
                                            Attorneys for Plaintiff,
8                                           THEODORE HATLESTAD

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S COMPLAINT FOR DAMAGES